[Civ. No. 20718. Second Dist., Div. One. July 11, 1955.]

BIRDIE D. HUGHES, Respondent, v. DEE FORWARD, Appellant.

Robert S. Butts and John Leo Harris for Appellant.

A. J. O'Connor and George J. Hider for Respondent.

DORAN, J.—This is an appeal from a judgment quieting title to certain real estate and stock certificates in favor of plaintiff, now deceased, and against the defendant-appellant Dee Forward, plaintiff's niece. The record title to the property was in the joint names of plaintiff and defendant.

From the record it appears that plaintiff's husband died on July 2, 1949, leaving all property to the plaintiff. Mrs. Hughes, the plaintiff, was 72 years old, suffering from diabetes, arteriosclerosis, cancer, and partial blindness. On April 5, 1950, Dee Forward, appellant, at respondent's request, drove Mrs. Hughes to the law office of Glen Behymer, who had handled Mr. Hughes' estate, and Mrs. Hughes there executed the deed here in question conveying the real estate to "Birdie D. Hughes and Dee Forward, as joint tenants."

This deed was notarized by Della R. Manes, Attorney Behymer's secretary. There is testimony that the attorney explained the nature of the conveyance to Mrs. Hughes, but this episode is denied by Mrs. Hughes.

On the same day, the joint tenancy deed was recorded "at request of Birdie D. Hughes, Dee Forward," as shown by the Recorder's stamp on the deed, and was returned to Attorney Behymer's office pursuant to a notation on the back of the conveyance. The respondent, Mrs. Hughes, admitted going to the attorney's office and the genuineness of the signature, but denied any knowledge or recollection of executing a joint tenancy deed.

Plaintiff testified: "It was my idea to make a will, and I supposed that I was signing a paper that I thought was a will"; that plaintiff did not deliver the joint tenancy deed to Dee Forward, and did not authorize Attorney Behymer to make delivery. Mrs. Hughes further denied having any knowledge of the deed until some two years later when desiring to sell the property; never had possession of the paper and never intended to execute such an instrument.

In respect to certificates of stock in El Tejon Ranch Company, bearing the names of Birdie D. Hughes and Dee Forward as joint tenants, Mrs. Hughes likewise denied having ever instructed anyone to create such a joint tenancy, denied delivering the certificates to Dee Forward and disclaimed any knowledge of the joint tenancy until in 1954. From the date of the decree of distribution under which the stock was received from Mr. Hughes' estate, Mrs. Hughes always considered herself the owner of the stock; "I not only considered it, I was. I took the dividends and spent it." Dee Forward never "claimed any right as an owner to any of these shares." During 1950-51, Mrs. Hughes and Dee Forward had a safe deposit box standing in both names. Appellant and respondent were living together in Mrs. Hughes' home from approximately December, 1949, until March, 1952, at which time, due to a family misunderstanding, Dee Forward left.

The record discloses that Dee Forward, although present at the attorney's office, did not see Mrs. Hughes sign the joint tenancy deed, and the latter "never handed it to me." The appellant testified: "Aunt Birdie (Mrs. Hughes) said that she was going to put the property in joint tenancy with me because she had been in failing health, and wanted my Aunt Kitty (sister of Mrs. Hughes) to be taken care

of in the event of her death, and, in any event, that she wanted the property to—what remained, to go to me, to my mother, and to my boy." Dee Forward "did not pay Aunt Birdie D. Hughes anything for this deed," and "never paid taxes on the property at any time." Nor did the appellant ever collect any rents from the property, and never paid anything for maintenance thereof.

Likewise, Dee Forward testified in answer to the question "you never received any delivery of any certificate of those shares, (El Tejon Ranch Company) did you?" said, "No, I can't recall," never had possession of the certificates, never received any assignment of the stock, and had no power of attorney from Mrs. Hughes authorizing the stock to be placed in joint tenancy. Mrs. Hughes denied any recollection of signing a request that the stock be issued in joint tenancy. The evidence does not solve the problem of how the stock certificate came to be issued in the joint names of respondent and appellant. And, as stated in appellant's brief, "The evidence is not clear, however, as to how the deed came back into the possession of either party after being returned to Birdie D. Hughes' attorney."

Mrs. Hughes' original complaint was for cancellation on the ground of fraud; for breach of contract, and to quiet title, but at the close of the evidence, plaintiff was permitted to amend to conform to proof on the additional ground that there had been no delivery of the deed or the stock. The trial court believed "that the evidence doesn't show a valid delivery of the deed or of the stock certificate or certificates," and "that the evidence does not show any intent on the part of Mrs. Hughes to make a present gift of either the property, the real property or the stock, to her niece, the defendant," and entered judgment accordingly.

It is appellant's contention that "A valid and irrevocable joint tenancy estate was created" between appellant and respondent in respect to both the real property and the corporate stock, and that Mrs. Hughes' actions "constituted gifts inter vivos and cannot be revoked by the grantor." It is claimed that "There is no substantial evidence in the record to support the findings and judgment . . . quieting title . . . in Birdie D. Hughes and holding that Dee Forward had never acquired an interest as joint tenant in said property."

As pointed out in respondent's brief, "appellant concedes a conflict in the evidence; yet notwithstanding this

concession, it is urged that plaintiff's evidence . . . 'is not only such as to tax the credulity of the trier of facts but also to justify an appellate court's total disregard thereof.' '' These contentions, in effect seeking a reconsideration and evaluation of weight and credibility of the evidence, are, as respondent says, "one which may be properly addressed to the trier of facts, and to the trial court on a motion for a new trial (both of which were done in this case and decided adversely to defendant) but not to an appellate tribunal.''

A survey of the record leaves no doubt in the mind that there is substantial evidence in support of the findings and judgment. ■ The fact that there is conflicting evidence merely brings the case within the well established rule that every such conflict must, on appeal, be resolved in favor of the trial court's findings "which are deemed conclusive.'' (*Sutera* v. *Palmieri,* 79 Cal.App.2d 359, 361 [180 P.2d 414].)

There is no serious question of law involved in the present appeal. The decision rests, rather, upon the credibility of the witnesses and which of two conflicting versions should be believed. If appellant's interpretation of the evidence is to prevail, then there was a fully executed gift *inter vivos* of land and stock which could not be recalled. But the trial court, having had the advantage of observing the demeanor of plaintiff and defendant on the stand and that of the supporting witnesses, came to a contrary conclusion—namely that Mrs. Hughes, ill and full of years, had never intended to make gifts to the niece, and that in some manner, not fully explained by the evidence, the transfers of land and stock, making Dee Forward a joint tenant thereof, were accomplished. It cannot be said that this conclusion is without support, nor that the plaintiff's testimony is incredible. No reversible error has been pointed out.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.